UNITED STATES, Appellee,

v.

First Lieutenant John W.
TIMBERLAKE, JR., U.S.
Air Force, Appellant.

No. 46132.
ACM 23772.

U.S. Court of Military Appeals.

Aug. 20, 1984.

For Appellant: *Major Alexander S. Nicholas* (argued); *Colonel Leo L. Sergi*

(on brief); *Colonel George R. Stevens, Major Robert L. McHaney, Jr.*, USAFR.

For Appellee: *Major Robert E. Ferencik* (argued); *Colonel Kenneth R. Rengert* (on brief).

### Opinion of the Court

FLETCHER, Judge:

On November 17, 1982, appellant was tried before a general court-martial composed of a military judge alone. Pursuant to his pleas, he was found guilty, *inter alia*,[1] of forgery, in violation of Article 123(2), Uniform Code of Military Justice, 10 U.S.C. § 923(2),[2] and conduct unbecoming an officer, in violation of Article 133, UCMJ, 10 U.S.C. § 933. The military judge sentenced him to dismissal from the armed forces, confinement at hard labor for 1 year and 1 day, and total forfeitures. The convening authority approved the dismissal and confinement for 6 months, and the United States Air Force Court of Military Review affirmed the approved sentence.

This Court specified review on the following question:

> WHETHER THE FINDINGS OF GUILTY OF THE SPECIFICATION, CHARGE I ARE MULTIPLICIOUS WITH THOSE OF THE SPECIFICATION, CHARGE II (CONDUCT UNBECOMING AN OFFICER).

We have considered this question in light of the decision of the Supreme Court in *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), and the decision of this Court in *United States v. Baker*, 14 M.J. 361 (C.M.A. 1983). We conclude that these findings of guilty under Article 123(2) (Charge I) must be vacat-

ed as a lesser included offense of this Article 133 violation (Charge II).

Appellant was convicted of the following charges and specifications which are the subject of the specified issue:

CHARGE I: Violation of the Uniform Code of Military Justice, Article 123.

Specification: In that FIRST LIEUTENANT JOHN W. TIMBERLAKE, JR., United States Air Force, 570th Strategic Missile Squadron, did, at Tucson, Arizona, during the period February-March 1982, with intent to defraud, utter a certain document, to wit: military travel orders for a permanent change of station for an individual other than himself, orders he, the said FIRST LIEUTENANT JOHN W. TIMBERLAKE, JR., then well knew had been falsely altered to replace the name of that individual with his own name, which said orders would, if genuine, apparently operate to the legal prejudice of the owner of Cobblecreek Apartments, Tucson, Arizona, by permitting him to terminate his lease at said apartments pursuant to a "military clause" in that lease which provided for early termination of said FIRST LIEUTENANT JOHN W. TIMBERLAKE, JR.'s obligations under the lease without default if he received military travel orders for a permanent change of station.

CHARGE II: Violation of the Uniform Code of Military Justice, Article 133.

Specification: In that FIRST LIEUTENANT JOHN W. TIMBERLAKE, JR., United States Air Force, 570th Strategic Missile Squadron, did, at Tucson, Arizona, during the period February-March 1982, wrongfully and dishonorably use

---

1. Appellant also pleaded guilty to and was found guilty of making a false statement and using marihuana in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. These two specifications are not pertinent to review of the specified issue and are affirmed.

2. Article 123, UCMJ, 10 U.S.C. § 923, states:
   Art. 123. Forgery
   Any person subject to this chapter who, with *intent to defraud* —

(1) falsely makes or alters any signature to, or any part of, any writing which would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice; or
   (2) *utters, offers, issues, or transfers such a writing, known by him to be so made or altered;*
   is guilty of forgery and shall be punished as a court-martial may direct.
(Emphasis added.)

military travel orders for a permanent change of station for an individual other than himself, which orders he, the said FIRST LIEUTENANT JOHN W. TIMBERLAKE, JR., then well knew had been falsely altered to replace the name of that individual with his own name in order to terminate early his lease at Cobblecreek Apartments, Tucson, Arizona, pursuant to a "military clause" in that lease which permitted termination of said FIRST LIEUTENANT JOHN W. TIMBERLAKE, JR.'s obligations under the lease without default if he received military travel orders for a permanent change of station, which conduct was to the disgrace of the armed forces.

And five, that the uttering by you was with the *intent to defraud*.

Five, that such use by you was *wrongful and dishonorable*.

And six, that under the circumstances, your conduct was unbecoming an officer and a gentleman.

(Emphasis added.)

The guilty-plea inquiry found in the record of trial provides the factual background pertinent to the above charges. It reveals that during the period February-March 1982, appellant desired to move out of his off-base apartment. His lease contained a "military clause" which provided for early termination should the lessee be required to move under military orders. In order to procure the benefits of this clause, appellant obtained and presented a bogus permanent change of station (PCS) order to his landlord, who discharged him from all obligations under the lease. This transaction resulted in his conviction for forgery for uttering the PCS order with intent to defraud the landlord and for conduct unbecoming an officer by wrongfully and dishonorably using the fake order to procure the termination of his lease.

The military judge prior to his plea inquiry explained the elements of the offenses charged against appellant, as follows:

In the specification of Charge I, you are charged with the offense of forgery, in violation of Article 123 of the Uniform Code of Military Justice. There are five elements to this offense.

In the specification of Charge II, you are charged with the offense of conduct unbecoming an officer and a gentleman, in violation of Article 133 of the Uniform Code of Military Justice. There are six elements to this offense.

First, that a certain document, that is, military travel orders for permanent change of station for an individual other than yourself were falsely altered to replace the name of that individual with your name.

First, that certain military travel orders for a permanent change of station for an individual other than yourself were falsely altered to replace the name of that individual with your name.

* * *

The second element of this offense is that this document described in the specification would, if genuine, apparently impose a legal liability on the owner of Cobblecreek Apartments or change his legal rights or duties to his harm; that is, it would permit you to terminate your lease at Cobblecreek Apartments, Tucson, Arizona, pursuant to a military clause in that lease which provided for early termination of your obligations under the lease without default, if you receive military travel orders for permanent change of station.

Second, that these travel orders described in the specification would, if genuine, apparently impose a legal liability on another or change his legal right or duty to his harm; that is, it would allow you to terminate early your lease at Cobblecreek Apartments, Tucson, Arizona, pursuant to a military clause in that lease which permitted termination of your obligations under the lease without default if you receive military travel orders for permanent change of station.

Third element. That during the period of February through March 1982, at Tucson, Arizona, you *uttered* this document.

Three, that during the period February-March 1982, at Tucson, Arizona, you *used* these military travel orders.

Fourth, that at such time, you knew that the document was falsely altered.

Four, that at such time, you knew that these military travel orders were falsely altered.

The military judge commented on the relationship of these offenses as follows:

MJ: First of all, the court agrees that Charges I and II are multiplicious for sentencing purposes. What that means, Lieutenant Timberlake, I will consider the specification under Charge I and the specification under Charge II as one offense for the purpose of sentencing. Do you understand that?

ACC: I understand, Your Honor.

The first question to be addressed is whether both of the above convictions arose from the same act or transaction. *See* para. 74*b* (4), Manual for Courts-Martial, United States, 1969 (Revised edition). The findings of guilty indicate that the time and place of both offenses were the same, *i.e.*, at Tucson, Arizona, during the period of February—March 1982. They also indicate that the criminal conduct required to be proven for each offense was substantially the same, *i.e.*, appellant's fraudulent tendering of altered travel or-

374

ders to terminate his lease at Cobblecreek Apartments pursuant to a military release clause in that lease.[3] In these circumstances, an issue of multiplicity for findings is raised. *See United States v. Baker, supra* at 368.

The next question we will address is whether appellant can be separately convicted at the same trial of two offenses arising from the same act or transaction. *See generally Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). Para. 74*b* (4), Manual, *supra,* states:

> The accused may be found guilty of two or more offenses arising out of the same act or transaction, without regard to whether the offenses are separate.

In *United States v. Baker, supra* at 367, this Court commented on the above manual provision. We said, "This rule, however, is not without exceptions and it must be viewed in the context of the Constitution and the Uniform Code of Military Justice." We do not depart from this position today. *See generally Parker v. Levy,* 417 U.S. 733, 785 n.36, 94 S.Ct. 2547, 2575 n.36, 41 L.Ed.2d 439 (1974) (Stewart, J., dissenting).[4] Accordingly, it is our task to discern whether Congress intended that both con-

victions be sustained. Article 44, UCMJ, 10 U.S.C. § 844. *See generally United States v. Richardson,* 21 U.S.C.M.A. 54, 44 C.M.R. 108 (1971).[5]

■ The particular object of our inquiry in the present case is to determine whether Congress intended appellant to be convicted of an Article 123(2) offense and an Article 133 offense arising from the same act or transaction. Examination of the legislative history of these two codal provisions reveals no clearly expressed legislative intent in this regard.[6] *See Whalen v. United States, supra; cf. Missouri v. Hunter, supra* at 678–79. Accordingly, we must interpret these statutes in light of the accepted rule of statutory construction stated long ago in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), as follows:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether these are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*See Missouri v. Hunter, supra* at 678. Furthermore, we note that a lesser-includ-

---

**3.** Unlike the situation presented in *United States v. Rodriquez,* 18 M.J. 363 (C.M.A. 1984) (opinion of Fletcher, J.), the criminal conduct is not alleged in identical fashion in both specifications. *Cf.* para. 212, Manual for Courts-Martial, United States, 1969 (Revised edition). However, it was established in identical fashion for both specifications in the guilty-plea inquiry:

> MJ: Okay, when you got these orders, what did you do with them?
> ACC: I carried those to the Cobblecreek management and they let me out of the lease.
> MJ: You actually tendered them to the management of the Cobblecreek Apartments?
> ACC: Yes, I did, Your Honor.
> MJ: When you gave these orders to the management of Cobblecreek Apartments, you knew that they were falsely altered, did you not?
> ACC: Yes, Your Honor.

Furthermore, appellant admitted that he intended to defraud the owner or management of the apartment complex as such an intent was defined by the military judge. *See* para. 3–94, DA Pam 27–9, *Military Judges' Benchbook* (May 1982).

**4.** Paragraph 212, Manual for Courts-Martial, United States, 1969 (Revised edition), is also cited as authority for the proposition that an accused may be convicted of conduct unbecoming an officer under Article 133, UCMJ, 10 U.S.C. § 933, and for the same act under any other article which is applicable. We note that this provision only states that such conduct "violates" both articles, not that both convictions could be sustained. *See* W. Winthrop, *Military Law and Precedents* 148–49, 380–83 (2d ed. 1920 Reprint). In any event, it is the intent of Congress which is controlling. *Missouri v. Hunter,* 103 S.Ct. 673, 679 (1983).

**5.** The Supreme Court in *Missouri v. Hunter, supra,* recently pointed out that the demands of the Constitution with respect to the double-jeopardy provision are synonymous with the will of the law-making body.

**6.** *See* Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Committee, 81st Cong., 1st Sess. 1232–33, 1235 (1949), reprinted in *Index and Legislative History, Uniform Code of Military Justice.*

ed offense is not a separate offense from its greater offense under this test. *Brown v. Ohio*, 432 U.S. 161, 166–67 n.6, 97 S.Ct. 2221, 2225–26 n.6, 53 L.Ed.2d 187 (1977); *see also Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).

■ A logical starting point for application of the above rule is an examination of the elements of the offenses proscribed by the statutes supporting the two convictions. *See United States v. Baker, supra* at 368. Article 133 requires generally that the Government prove the accused engaged in conduct and that such conduct was unbecoming an officer and a gentleman. *See* para. 212, Manual, *supra*. Article 123(2) requires that the accused be shown to have engaged in a particular type of conduct-forgery. *See* para. 202, Manual, *supra*. Furthermore, we note that forgery as defined by Article 123(2) can constitute the conduct required to be proven under Article 133, but it is not necessarily included in every offense which could exist under the latter codal article. Para. 212, Manual, *supra*.

■ The relationship of the provisions of these two statutes is analogous to that confronting the Supreme Court in *Whalen v. United States, supra*, 445 U.S., at 694–95, 100 S.Ct. at 1439–40. There, one statute generally proscribed killing during the commission of six specified felonies. *See* D.C. Code § 22–2401 (1973). The second statute proscribed forcible rape, one of the above specified felonies. D.C. Code § 22–2801 (1973). The Supreme Court, applying the *Blockburger* rule, concluded that regardless of the possibility that felony murder could be shown without proof of rape in some other case, it was a necessary element of proof where the underlying felo-

ny was rape. *Id*. Although Article 133 is considerably broader than D.C. Code § 22–2401, we find the relationship of the elements of the statutes before us to be the same. Accordingly, where the underlying conduct required for conviction under Article 133 is forgery as defined by Article 123(2),[7] we conclude Congress intended forgery to be a lesser-included offense of conduct unbecoming an officer. *See Whalen v. United States, supra* at 694 n.8, 100 S.Ct. at 1439 n.8.

■ The only substantial difference between these two offenses is that the Article 133 offense required the Government to show that appellant's acts under the circumstances of this case constituted conduct unbecoming an officer. *See* para. 212, Manual, *supra*. The conduct must not only be shown to dishonor the individual but also seriously compromise his standing as an officer. *See* W. Winthrop, *Military Law and Precedents* 711–12 (2d ed. 1920 Reprint). This element of proof is not required to be pleaded and proven under Article 123(2). However, this single element of proof is not sufficient to render these offenses separate under the aforementioned *Blockburger* test. On the contrary, the above analysis of the elements of these offenses in this case clearly establishes that the forgery offense here required no proof beyond that which was required for the offense of conduct unbecoming an officer by committing forgery. *Whalen v. United States, supra* at 694–95, 100 S.Ct. at 1439–40; *see Brown v. Ohio, supra*, 432 U.S., at 169, 97 S.Ct. at 2227. In the absence of a clearly expressed legislative intent to the contrary, the lesser offense must be dismissed. *United States v. Bak-*

---

**7.** The Government has not even suggested that the conduct which it was required to prove for appellant's conviction under Article 133 was different from the forgery offense which it was required to prove under Article 123(2), UCMJ, 10 U.S.C. § 923(2). *See Whalen v. United States*, 445 U.S. 684, 695, 100 S.Ct. 1432, 1439, 63 L.Ed.2d 715 (1980). Such a contention as a matter of fact has no support in the guilty-plea inquiry contained in this record of trial. *See* n.3, *supra*. The pleadings under Article 133 are not based on any particular sample specifica-

tion involving an altered writing. *See* Form Specification 93, Appendix 6c, Manual, *supra*. *Cf*. Form Specifications 96, 122, 124, and 125, Manual, *supra*. Under these circumstances, we are justified in concluding in the present case that, as a matter of fact and law, the unbecoming conduct and the forgery offense were one and the same. *Cf. United States v. Brand*, 10 U.S.C.M.A. 437, 28 C.M.R. 3 (1959); *United States v. Kirksey*, 6 U.S.C.M.A. 556, 20 C.M.R. 272 (1955); *United States v. Downard*, 6 U.S.C. M.A. 538, 20 C.M.R. 254 (1955).

er, *supra* at 367; *United States v. Glover*, 16 M.J. 397, 399 (C.M.A. 1983) (Fletcher, J., concurring). *See Missouri v. Hunter, supra.*

A final comment in this case is warranted in view of the Government's citations in its brief to two decisions from the Army Court of Military Review. *See United States v. Sheehan*, 15 M.J. 724, 727–28 (1983); *United States v. Clark*, 15 M.J. 594, 597 (1983). These decisions suggest that a violation of a particular substantive codal provision and a general violation of the prohibition against conduct unbecoming an officer based on the same conduct are always separate offenses for purposes of findings. The asserted legal basis for this conclusion is the decision of the Supreme Court in *Carter v. McClaughry*, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236 (1902). We disagree with this conclusion and the lower court's interpretation of *Carter v. McClaughry, supra.*

The pertinent issue in *Carter v. McClaughry, supra* at 396, 22 S.Ct. at 193, was whether the court-martial was legally empowered to sentence that defendant to dismissal for certain offenses. These offenses were conspiracy to defraud the United States, in violation of Article of War 60; "[c]ausing false and fraudulent claims to be made against the" same, in violation of Article of War 60; and conduct unbecoming an officer by knowingly paying a false claim, in violation of Article of War 61. All three offenses were related to and grew out of one transaction. The defendant Carter was sentenced to dismissal, degradation, fine, and imprisonment.

Before the Supreme Court, Carter asserted that Article of War 60 did not authorize his court-martial to award a dismissal for either or both offenses of which he was convicted under this Article of War. He further contended that the offense of conduct unbecoming an officer under Article of War 61 was the same offense by a different name as those for which he was convicted under Article of War 60. Accordingly, he argued that punishment of dismissal authorized by Article of War 61

must be considered an additional punishment for the same offense under Article of War 60, imposed in violation of the double jeopardy provision of the Fifth Amendment.

The Supreme Court disagreed. It interpreted the punishment provisions of Article of War 60 to permit imposition of a dismissal for either or both offenses pleaded thereunder. It further construed Article of War 100 to permit the punishment of dismissal for the offense of fraud committed by an officer such as those prescribed by Article of War 60. Accordingly, it concluded that Carter's court-martial was empowered to award a dismissal.

█ In the midst of this analysis, the Supreme Court did state the following:

> But the offense of conduct unbecoming an officer and a gentleman is not the same offense as conspiracy to defraud or the causing of false and fraudulent claims to be made, although to be guilty of the latter involves being guilty of the former.

*Id.* at 395, 22 S.Ct. at 193. We do not believe, however, that this statement can be broadly cited for the principle of law asserted in *United States v. Sheehan* and *United States v. Clark*, both *supra.* First, the above statement was dicta and its broad extrapolation is both unjustified and inconsistent with the Supreme Court's earlier use in that decision of the test for separate offenses found in *Morey v. Commonwealth*, 108 Mass. 433 (1871), and its subsequent approval of this test in *Blockburger v. United States, supra.* Second, in *Carter v. McClaughry, supra*, the conduct alleged to be unbecoming an officer under Article of War 61 was the paying out of funds of the United States which was a different fact required to be proven than required to be proven under the Article of War 60 offenses. Finally, the Supreme Court did not particularly hold that these Article of War 60 offenses were lesser-included offenses of the conduct-unbecoming-an-officer offense but only that they "involved" one another. Assuming we have misread *Carter*, we are convinced that the

more recent decision of the Supreme Court in *Brown v. Ohio, supra,* must take precedence. Accordingly, we hold that there is no *per se* rule that the same conduct charged as a particular violation of the Code and as a violation under Article 133 constitutes separate offenses for purposes of findings.

The decision of the United States Air Force Court of Military Review as to Charge I and its specification is reversed. The findings of guilty as to Charge I and its specification are set aside and Charge I and its specification are dismissed. In all other respects the decision below is affirmed.

EVERETT, Chief Judge (concurring):

The duplication of charges against an officer that has occurred here, in *United States v. Rodriquez,* 18 M.J. 363 (C.M.A. 1984), and in many other cases is an anachronism inherited from practice under the Articles of War. Article of War 95 provided that "[a]ny officer or cadet who is convicted of conduct unbecoming an officer and a gentleman shall be dismissed from the service." Most of the other punitive Articles of War authorized punishment "as a court-martial may direct." *See, e.g.,* Articles of War 54–57, 60–79, 81, 83–85, 87–93.

In view of these statutory provisions, a draftsman of charges against an officer often would allege that the misconduct violated Article of War 95, in order to assure that, if convicted, the accused was dis-missed from the Army. However, usually a charge would also be preferred under another punitive article, so that the sentence of the court-martial could include other penalties besides the dismissal.

The Uniform Code of Military Justice eliminated the occasion for such pleading. Instead of providing solely for mandatory dismissal of the officer, Article 133 [1] —which prohibits "conduct unbecoming an officer and a gentleman"—allows punishment "as a court-martial may direct." This same provision appears in most of the other punitive articles.[2] *See, e.g.,* Articles 78, 80–105, 107–17, 119–32, UCMJ, 10 U.S.C. §§ 878, 880–905, 907–17, 919–32, respectively. Therefore, no legitimate advantage accrues to the Government from charging the same act as a violation both of Article 133 and of some other punitive article. On the other hand, an accused suffers the disadvantage of appearing to have committed two crimes instead of only one.

Although technically Timberlake's violation of Article 133 was the greater offense and the forgery was lesser included, I believe the most straightforward method of drafting the charges would have been to rely solely on Article 123,[3] the punitive article which specifically prohibits the misconduct involved. However, in light of the manner in which the charges were preferred, I agree fully with Judge Fletcher's rationale and disposition of the multiplicious findings here—just as I do in *Rodriquez.*

---

1. Uniform Code of Military Justice, 10 U.S.C. § 933.

2. Article 134, UCMJ, 10 U.S.C. § 934, follows Article of War 96 in authorizing punishment "at the discretion of" the court-martial. However, this variation in language seems inconsequential.

3. UCMJ, 10 U.S.C. § 923.