**UNITED STATES**

v.

**Captain Beverly J. HART, 267–63–5067 FV, United States Air Force.**

**ACM 28178.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 22 Sept. 1989.

Decided 13 June 1990.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Major Ronald G. Morgan.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Colonel Robert E. Giovagnoni; Major Paul H. Blackwell, Jr.; Captain Morris D. Davis; Captain Thomas E. Wand and Lieutenant Colonel Barret E. Kean, USAFR.

Before BLOMMERS, KASTL and MURDOCK, Appellate Military Judges.

### DECISION

KASTL, Senior Judge:

This is a case of first impression on sentencing under Article 133, UCMJ, 10 U.S.C. § 933. It centers on the interpretation of the words "the most analogous offense" (MCM, Part IV, para. 59 e) when assessing the correct maximum punishment for officer misconduct.

*Maximum Punishment Under Article 133*

Prior to 1949, punishment for violations of the predecessors to Article 133 was man-

datory dismissal. *See* Moyer, *Justice and the Military* (1972) 1036. This obligatory requirement was deleted with the passage of the Uniform Code of Military Justice; punishment for a convicted officer became "as a court-martial may direct." *See* Article 133, UCMJ.

Under the 1969 Manual, one could not easily find explicit guidance as to punishments for officers who violated Article 133. Punishment for that article was not mentioned in the 1969 Table of Maximum Punishments. Some vague discussion appeared at MCM, 1969, paragraph 126d. Accordingly, between 1969 and 1984, guidance generally governing maximum punishments was employed in officer cases. It provided that:

> If an offense not listed in the [Table of Maximum Punishments] is included in an offense which is listed and is also closely related to some other listed offense, the *lesser* punishment prescribed for either the included or closely related offense will prevail as the maximum limit of punishment. *However, if the offense is closely related to more than one listed offense, the maximum punishment for the most closely related offense shall be used in making this determination.*

MCM, 1969, paragraph 127c(1) (emphasis added). The Army Judge Advocate General's Analysis of the 1969 Manual states that the italicized guidance was based on *United States v. Alexander*, 3 U.S.C.M.A. 346, 349–350, 12 C.M.R. 102, 105–106 (1953). DA Pam 27-2, Analysis of Contents, Manual for Courts–Martial, United States, 1969, Revised Edition (July 1970) page 25–7. *See also United States v. Ramirez*, 21 M.J. 353, 354 (C.M.A.1986); *United States v. Giordano*, 15 U.S.C.M.A. 163, 35 C.M.R. 135 (1964); Nelson, *Conduct Expected of an Officer and a Gentleman: An Ambiguity*, AF JAG L. Rev. Vol. XII, No. 2 (Spring 1970) 124, 132.

The 1984 Manual set up a new and far clearer maximum punishment scheme. It provides for:

> Dismissal, forfeiture of all pay and allowances, and confinement *for a period not in excess of that authorized for the most analogous offense for which a punishment is prescribed in this Manual,* or, if none is prescribed, for 1 year.

MCM, Part IV, para. 59 e (emphasis added).

### Factual Setting

In the present case, the appellant was found guilty under Article 133 of unacceptable conduct comprising both housebreaking and assault consummated by a battery.[1] Captain Beverly Hart, the appellant, is a career officer with a stellar record. She is married to another Air Force officer, Captain Anthony Hart. He had known Staff Sergeant Lila Floyd, the victim, since he arrived at Plattsburgh Air Force Base, New York. The appellant, also stationed at Plattsburgh, suspected that her husband and Sergeant Floyd were having an affair.[2]

---

1. Originally, the appellant was charged with both the specific crimes of housebreaking and assault with a means likely to produce grievous bodily harm and an umbrella Article 133 violation. The military judge dismissed the specific violations and trial proceeded on the Article 133 offense. Within that Article 133 offense the assaultive behavior which remained was not aggravated assault, but only simple assault. Accordingly, the maximum punishment available for this portion of the appellant's conduct was limited to six months of confinement. She was found not guilty of indecent language, which had also been charged within the umbrella Article 133 specification.

2. At trial, the appellant listed the following matters as generating her suspicions and frustrations concerning her husband's relationship with the victim: (a) out-of-town trips which Captain Anthony Hart and Sergeant Floyd had taken together; (b) gossip which came to the appellant's attention about her husband "womanizing"; (c) a tape of a purported telephone conversation between the victim and the appellant's husband which suggested an overly-friendly relationship; (d) the appellant's belief that when Sergeant Floyd needed to advise her partner(s) of a sexually-transmitted disease, Captain Anthony Hart appeared at the hospital three hours afterwards; (e) an alleged comment by Sergeant Floyd's daughter that she and the appellant's child were going to be brother and sister; and (f) the fact that after Captain Anthony Hart advised the appellant to take medicine to prevent her catching his disease (see item d, above) their child was born with a birth defect supposedly triggered by that medicine.

Evidence at trial showed that the appellant, uninvited, entered the home of the victim and assaulted her. Physical evidence illustrating the extent of the encounter included a picture of the victim with three abrasions across the right side of her face and another abrasion across her left shoulder; three broken finger nails, supposedly those of the appellant; and strands of hair, allegedly pulled from the victim's head.

### Application

■ Housebreaking (Article 130, 10 U.S.C. § 930), carries a maximum confinement of five years; in contrast, assault and battery (Article 128, 10 U.S.C. § 928), lists a maximum confinement of six months. We are called upon to determine which of the two is "most analogous" in the present situation. We have received the benefit of able oral argument from both the appellant and the Government. Having carefully considered their presentations and reviewing the record, we reason that assault consummated by a battery is the offense "most analogous," with its six month maximum. In our judgment, the gravamen of the appellant's conduct—and what military society principally sought to punish in this case—was the crime of assault, not housebreaking.[3]

Protection of Sergeant Floyd's house was not at the heart of this court-martial. To the contrary, we are confident that *it was the protection of Floyd herself* which was crucial. Had the appellant merely entered the Floyd home without assaulting her, we seriously doubt that such mischief would have led to a court-martial. Clearly, it was the attack upon Sergeant Floyd by a commissioned officer which was the gravamen of actionable conduct.

Based upon our reading of the record and analysis of the appellant's conduct, we hold that the military judge erred in holding, over defense objection, that the maxi-

mum available punishment as to confinement in this case was set by the housebreaking offense (five years) rather than assault and battery. *See generally United States v. Taylor*, 23 M.J. 314, 318 (C.M.A. 1987); *United States v. Howe*, 17 U.S.C. M.A. 165, 37 C.M.R. 429, 444–445 (1967); *see also United States v. Ettleson*, 13 M.J. 348, 360 (C.M.A.1982); *United States v. Parks*, 3 M.J. 591 (N.C.M.R.1977); *United States v. Yordy*, 36 C.M.R. 851 (A.F.B.R. 1965).

■ At trial, the military judge suggested that the two offenses were "equally analogous." We cannot agree that the words are capable of such an interpretation. One is compelled to choose between the alternatives.

Appellate Government counsel makes a telling point. He argues that if our interpretation of the words "most analogous" is correct, it can be defeated in the future by clever draftsmen. Thus, argues Government counsel, if housebreaking and assault are charged as *separate* Article 133 offenses, the maximum offense will be five and one-half years (or assuming their multiplicity for sentencing purposes, five years) and an appellant cannot be heard to complain.

We respond that we must take the situation as we find it. Each case is like a "given" in mathematics. In today's "given" situation, two crimes are telescoped into one Article 133 offense. In resolving the dilemma, we must give a plain meaning to the words "most analogous." We apply today's Manual today. The Government is free to set forth a new standard tomorrow, if it so chooses, in a future revision to the Manual for Courts–Martial.

### Remedy

■ Because the sentence in this case included a dismissal, six months confinement and a forfeiture of $6,000.00, we can-

---

**3.** Housebreaking encompasses entering a structure, occupied or not, with the intent to commit some criminal offense. The sorts of structures which are protected include shops, inhabitable trailers, tents, walk-in freezers used to store foodstuffs, and freight cars. *See* MCM, Part IV,

paragraph 56c. Corncribs, chicken coops, smokehouses, powder magazines, and storehouses have been considered structures within the meaning of civilian housebreaking or burglary statutes. *See United States v. Scimeca*, 12 M.J. 937, 939 (N.M.C.M.R.1982).

not rest assured that the stated maximum—which exposed the appellant to ten times the correct maximum punishment as to confinement—did not affect the sentence. *See United States v. Peoples*, 29 M.J. 426, 428 (C.M.A.1990).

We will set aside the sentence and order a rehearing on sentence.[4]

The findings of guilty are affirmed and the sentence is set aside. The record of trial is returned to The Judge Advocate General for remand to a convening authority. A rehearing on the sentence may be ordered. *See United States v. Montesinos*, 28 M.J. 38, 43 (C.M.A.1989); AFR 111–1, *Military Justice Guide*, para. 16–12 a(1)(b) (12 July 1989).

Senior Judges BLOMMERS and MURDOCK concur.

---

4. The appellant has asserted as error the military judge's failure to admit a tape recording of a telephone conversation between the victim and the appellant's husband. We believe the military judge ruled correctly in finding the recording at best collateral to the matters before the court. Assuming *arguendo* it would have helped to show an overly-friendly relationship between the victim and the appellant's husband, the matter forms no defense to the appellant's crimes. *See United States v. Tyler*, 26 M.J. 680, 681–682 (A.F.C.M.R.1988).